

# The Servicemembers Civil Relief Act (SCRA): A Private Cause of Action

**(name redacted)**
Legislative Attorney

January 24, 2011

Congressional Research Service

7-....
www.crs.gov
R41470

**CRS Report for Congress**
*Prepared for Members and Committees of Congress*

# Summary

Congress has long recognized the need to protect the legal interests of servicemembers whose service to the nation may compromise their ability to meet specified commercial and financial obligations. The purpose of the Servicemembers Civil Relief Act (SCRA) is to provide for, strengthen, and expedite the national defense by protecting servicemembers, enabling them to "devote their entire energy to the defense needs of the Nation." The SCRA protects servicemembers by temporarily suspending certain judicial and administrative proceedings and transactions that may adversely affect their legal rights during military service.

Prior to enactment of P.L. 111-275, the SCRA did not explicitly provide for a private cause of action. A private cause of action allows an individual, in a personal capacity, to sue in order to enforce a right or to correct a wrong. In the absence of an explicit right of a private cause of action, the right to enforce afforded rights presumably rests with the government. Most courts that have considered the issue found that a private cause of action exists under the SCRA. An opinion from the United States District Court for the Western District of Michigan, *Hurley v. Deutsche Bank Trust Company*, disagreed with decisions from U.S. district courts in Illinois, Louisiana, Oregon, and Texas, and found that a private cause of action did not exist under the act. However, upon reconsideration the court vacated its earlier opinion and held that a private cause of action did exist under various sections of the SCRA.

On October 13, 2010, P.L. 111-275, the Veterans' Benefits Act of 2010, was enacted. In addition to clarifying protections under the SCRA, including those related to residential and motor vehicle leases, the act explicitly creates a Title VIII addressing civil liability. Under Title VIII of the SCRA, the U.S. Attorney General is authorized to commence a civil action against any person who engages in a pattern or practice of violating the act or engages in a violation of the act that raises an issue of significant public importance. Servicemembers and their dependents have the right to join a case commenced by the U.S. Attorney General, but they may also commence their own civil action (i.e., a private cause of action) to enforce protections afforded them under the SCRA. Finally, Title VIII provides that neither the U.S. Attorney General's authority or the servicemember's right of a private cause of action preclude or limit any other remedies available under the law, including consequential or punitive damages for violations of the SCRA.

# Contents

Introduction ................................................................................................................................1
Judicial Interpretation of the SCRA Before the Veterans' Benefits Act of 2010 ............................3
Congressional Action ..................................................................................................................9

# Contacts

Author Contact Information ......................................................................................................10

# Introduction

Congress has long recognized the need to protect the legal interests of servicemembers whose service to the nation may compromise their ability to meet certain commercial and financial obligations. During the Civil War, Congress enacted an absolute moratorium on civil actions brought against soldiers and sailors. During World War I, Congress passed the Soldiers' and Sailors' Civil Relief Act of 1918,[1] which did not create a moratorium on legal actions against servicemembers, but instead directed trial courts to apply principles of equity to determine the appropriate action to take whenever a servicemember's rights were involved in a controversy. During World War II, Congress essentially reenacted the expired 1918 statute as the Soldiers' and Sailors' Civil Relief Act of 1940, and then amended it substantially in 1942 to take into account the new economic and legal landscape that had developed between the wars. During consideration of the amendments in the 87th Congress, Representative Overton Brooks stated,

> This bill springs from the desire of the people of the United States to make sure as far as possible that men in service are not placed at a civil disadvantage during their absence. It springs from the inability of men who are in service to properly manage their normal business affairs while away. It likewise arises from the differences in pay which a soldier received and what the same man normally earns in civil life.[2]

Congress enacted amendments on several occasions during subsequent conflicts, including 2002 when the benefits of the SSCRA were extended to certain members of the National Guard.[3] In 2003, Congress enacted the Servicemembers Civil Relief Act (SCRA) as a modernization and restatement of the SSCRA and its protections.[4]

The SCRA is an exercise of Congress's power to raise and support armies (U.S. Const. Art. I, sec. 8, cl. 12) and to declare war (Art. I, sec. 8, cl. 11).[5] The purpose of the act is to provide for, strengthen, and expedite the national defense by protecting servicemembers, enabling them to "devote their entire energy to the defense needs of the Nation" by providing for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect their legal rights during military service.[6] Forgiving of all debts or the extinguishment of contractual obligations on behalf of servicemembers who have been called up for active duty is not required, nor is absolute immunity from civil lawsuits provided. Instead, the act provides for the suspension of claims and protection from default judgments. In this way, it seeks to balance the interests of servicemembers and their creditors, spreading the burden of national military

---

[1] 40 Stat. 440 (1918).

[2] H.Rept. 108-81, at 33 (April 30, 2003) (quoting statement by Rep. Overton Brooks on the floor of the House during consideration of amendments in 1942 to the SSCRA. 87 Cong. Rec. H 5553 (June 11, 1942)).

[3] P.L. 107-330, 116 Stat. 2820 (December 6, 2002) (extending benefits of SSCRA to members of the National Guard called up by their respective state governors to support federal efforts during national emergencies, including the war against terrorism).

[4] P.L. 108-189, 117 Stat. 2835 (December 19, 2003) (One of the amendments effected by P.L. 108-189 is the change in the name of the act from Soldiers' and Sailors' Civil Relief Act (SSCRA) to Servicemembers Civil Relief Act (SCRA). The name was changed to the more inclusive SCRA "because soldiers, sailors, marines and airmen are collectively referred to as "servicemembers" in other statutes" (H.Rept. 108-81, at 35 (April 30, 2003)). Therefore, all of the historical and legal background of this act makes reference to SSCRA instead of SCRA. For ease of discussion, the term "SCRA" will be used to refer to both the SSCRA and the SCRA.

[5] *Dameron v. Brodhead*, 345 U.S. 322 (1953).

[6] 50 U.S.C. app. § 502.

service to a broader portion of the citizenry.[7] In *Engstrom v. National Bank of Eagle Lake*, the United States Court of Appeals for the Fifth Circuit acknowledged the balancing required when it stated "[a]lthough the act is to be liberally construed it is not to be used as a sword against persons with legitimate claims."[8]

Many of the SCRA provisions are especially beneficial for Reservists activated to respond to a national crisis, but many provisions may be useful for career military personnel.[9] One of the measures that affects many who are called to active duty is the limit on the interest rate that may be charged on debts incurred prior to a person's entry into active duty military service. Other measures protect military families from being evicted from rental or mortgaged property; from cancellation of life insurance; from taxation in multiple jurisdictions; from foreclosure of property to pay taxes that are due; and from losing certain rights to public land. In order to receive protections afforded under the SCRA, servicemembers are generally required to provide notice of their desire to invoke the protection. For example, with respect to the interest rate limitation, the servicemember is required to provide written notification to the creditor with a copy of his/her orders establishing a period of active duty service.[10]

The importance of servicemembers knowing and understanding their rights is evidenced by the requirement in the act that all servicemembers be provided written notice of their rights by the Secretary of each of the armed services.[11] In the event that a servicemember feels that he/she is not receiving the statutory protections, the servicemember may request assistance from military legal assistance officers, civilian lawyers, and in some circumstances the United States Department of Justice (DOJ).[12] The DOJ Civil Rights Division will investigate specific complaints and, if necessary, institute legal proceedings to protect the rights of servicemembers. The DOJ Civil Rights Division filed its first lawsuit under the SCRA on December 10, 2008, alleging a towing company in Norfolk, VA, participated in unlawful enforcements of storage liens.[13]

Prior to the recent legislation expressly creating a private cause of action, most courts that have considered the issue found that a private cause of action exists under the SCRA. An opinion from the United States District Court for the Western District of Michigan, *Hurley v. Deutsche Bank*

---

[7] For a more in-depth analysis of the SCRA, see CRS Report RL34575, *The Servicemembers Civil Relief Act (SCRA): An Explanation*, by (name redacted).

[8] *Engstrom v. First Nat'l Bank*, 47 F.3d, 1459, 1462 (5th Cir. Tex. 1995).

[9] *See* James P. Pottorff, *Contemporary Applications of the Soldiers' and Sailors' Civil Relief Act*, 132 Mil. L. Rev. 115, 118 (1991) (noting that many protections are ordinarily unavailable to career servicemembers because they enter into most major financial obligations, such as mortgages, while on active duty).

[10] 50 U.S.C. app. § 527(b)(1).

[11] 50 U.S.C. app. § 515.

[12] *See* The United States Department of Justice, Civil Rights Division, Safeguarding the Rights of Servicemembers and Veterans website (available at http://www.usdoj.gov/crt/military/index.html).

[13] Press Release, Department of Justice, Press Release, Justice Department Sues Towing Company for Violating the Servicemembers Civil Relief Act (December 10, 2008) (The Justice Department alleges that Earnest Cooper and Aristocrat Towing located in Norfolk, VA, violated the SCRA by towing and then selling a servicemember's vehicle without a court order. The complaint also alleges that the defendants may have injured other servicemembers by enforcing storage liens on their vehicles without court orders in violation of the act. On March 11, 2010, the court issued an order denying the defendants' motion for judgment on the pleadings in *U.S. v. B.C. Enterprises*, 696 F. Supp. 2d 593 (2010). The court ruled that the United States has a non-statutory right to seek civil damages on behalf of servicemembers under Section 537 of the Servicemembers Civil Relief Act (SCRA). The court certified its order for interlocutory appeal. The case remains on appeal.)

*Trust Company*,[14] disagreed with decisions from U.S. district courts in Illinois, Louisiana, Oregon, and Texas, and found that a private cause of action did not exist under the act. Upon reconsideration, the court vacated its earlier opinion and held that a private cause of action did exist under various sections of the SCRA.[15] With the enactment of P.L. 111-275, the Veterans' Benefits Act of 2010, the act now includes explicit language authorizing the U.S. Attorney General to commence civil actions, as well as a private cause of action available to servicemembers and their dependents to enforce protections under the SCRA.

# Judicial Interpretation of the SCRA Before the Veterans' Benefits Act of 2010

In *Moll v. Ford Consumer Finance Company, Inc.*, the United States District Court for the Northern District of Illinois held that a private cause of action existed under the provision limiting the amount of interest that may be charged on debt incurred prior to service.[16] Moll, a reservist in the United States Air Force, was ordered to active duty in support of the Persian Gulf War in 1991. Upon activation, he contacted Ford and requested that the interest rate on his car loan be reduced from a variable rate of 10.25% to 6% as provided for under the SCRA and provided all documentation requested by Ford.[17] Ford failed to adjust the interest rate and continued to charge 10.25% on the loan. Moll filed an action alleging Ford violated the SCRA and received unlawful interest subject to penalties under the Illinois Interest Act.[18] Ford moved to dismiss the action arguing that Moll failed to state a claim, contending that a private cause of action did not exist under the SCRA, and that because the loan was secured by a mortgage, the loan was exempt from the Illinois Interest Act.[19]

The court acknowledged that a private cause of action was not explicit in the act and turned to a four-part test, created by the United States Supreme Court in *Cort v. Ash*,[20] to determine if a private cause of action existed even though it was not expressly provided for in the statute. The *Cort* factors are (1) does the statute create a federal right in favor of the plaintiff; (2) is there any indication of legislative intent, explicit or implicit, to create or deny a private remedy; (3) is it consistent with the underlying purposes of the legislative scheme to imply such a remedy; and (4) is the cause of action one traditionally relegated to state law, so that it would be inappropriate to infer a cause of action based solely on federal law.[21] However, the court further stated the Supreme Court has "retreated from this four-factor approach and has focused primarily on the legislative intent of the statute – the second factor."[22] Thus, the court, focusing on the legislative

---

[14] *Hurley v. Deutsche Bank Trust Company*, 2008 U.S. Dist. LEXIS 80526 (W.D. Mich. September 30, 2008).

[15] *Hurley v. Deutsche Bank Trust Company*, 2009 U.S. Dist. LEXIS 20261 (W.D. Mich. March 13, 2009).

[16] *Moll v. Ford Consumer Fin. Co.*, 1998 U.S. Dist. LEXIS 3638 (N.D. Ill. March 16, 1998) (finding a private cause of action exists under § 526 of the SSCRA, codified at 50 U.S.C. app. § 527).

[17] *Id*. at 2.

[18] *Id*. at 3 (Illinois Interest Act, 815 ILCS § 205/6).

[19] *Id*. (The court dismissed the claim for penalties under the Illinois Interest Act on the basis that the state law does not encompass violations of federal Law. *Id*. at 16).

[20] *Cort v. Ash*, 422 U.S. 66 (1975).

[21] *Cort* at 78.

[22] *Moll* at 9 (citing, e.g, *Sutter v. Artist M.*, 503 U.S. 347, 364 (1992); *Thompson v. Thompson*, 484 U.S. 1274, 1279 (1998).

intent of the act, the second *Cort* factor, stated that the interest limitation was "designed to give relief to military persons called into service."[23] The court determined that the act confers a benefit on a servicemember that is not otherwise available to private citizens and therefore a private cause of action must be intended "because otherwise the relief would [be] of no value at all."[24] Finally, the court addressed the remaining *Cort* factors and found that the act created a federal right in favor of Moll; the interest rate limitation is consistent with the purpose of the act to provide servicemembers with relief in meeting their financial obligations; and that it is not an area of law traditionally relegated to state law, rather it is grounded in Congress's right to raise and maintain armed forces of the United States.[25] Finding a private cause of action with respect to the interest rate limitation section of the act, the court denied Ford's motion to dismiss.

The United States District Court for the Northern District of Texas, in *Marin v. Armstrong*,[26] found an inferred private cause of action in two separate sections of the SCRA. In *Marin*, the servicemember claimed that as a result of illness from military service he was unable to fulfill his obligations on debt he owed for the purchase of a car.[27] He alleged that he informed TranSouth, the holder of the loan, of his inability to make payments on the obligation and requested that they toll his obligation until his health allowed him to make payments.[28] Marin further alleged that TranSouth not only failed to toll his obligation, but that it continued to violate the SCRA by harassing him, sending collection letters, and taking adverse credit action against him.[29] TranSouth moved to dismiss the action on the basis that the SCRA did not provide for a private cause of action, rather it provided only defensive relief for servicemembers, and that even if it did, Marin was not entitled to relief because the act does not relieve him of his duty to make payments on the obligation.[30]

The court agreed that Marin did not have an automatic right to toll his obligation under the installment contract, but that after receiving notice of his inability to meet his obligation, TranSouth was required to seek a judicial remedy in a court of competent jurisdiction and failed to do so.[31] The court, citing the rationale of *Moll*, stated that "Congress must have intended a private cause of action to exist" to enforce these two sections of the act.[32] The court questioned TranSouth's assertion that the act be viewed as a defensive measure, stating that if that were the case, a creditor could "simply ignore" provisions of the act and the servicemember would be unable to bring a cause of action.[33] The court acknowledged that a criminal penalty did exist for violations of the act, but that such penalty provided no relief to the servicemember and that a "result that fails to make the servicemember whole defies the purpose of the statute."[34] The court further stated that "without a private cause of action there would be no way for a servicemember

---

[23] *Id.*

[24] *Id.* at 14 (quoting 88 Cong. Rec. 5366 (1942)).

[25] *Id.* at 14.

[26] *Marin v. Armstrong*, 1998 U.S. Dist. LEXIS 22792 (N.D. Tex. August 31, 1998).

[27] *Id.* at 2.

[28] *Id.* at 9 (§ 531 of the SSCRA, codified at 50 U.S.C. app. § 532).

[29] *Id.* at 3 (§ 518 of the SSCRA, codified at 50 U.S.C. app. § 518).

[30] *Id.* at 4.

[31] *Id.* at 10.

[32] *Marin* at 12.

[33] *Id.* at 12.

[34] *Id.* at 13 (finding a private cause of action under § 531 of the SSCRA).

to ensure that his rights were protected under the section. Creditors and insurers could simply ignore the provisions of the section without repercussion."[35]

In *Cathey v. First Republic Bank*,[36] the United States District Court for the Western District of Louisiana found an implied private cause of action under the provisions prohibiting a creditor from changing the terms of credit when the act has been invoked by a servicemember and limiting the amount of interest that may be charged on debt incurred prior to service. Cathey, a lieutenant colonel in the United States Army Reserve, alleged that First Republic Bank failed to lower the interest rate on two separate loans after he was ordered to active duty and that the bank modified the terms of the credit agreement after he invoked protections under the act. The loans in question were signed by Cathey and his wife, individually and jointly, to finance the construction of two gasoline/convenience stores.[37] As required by the act, Cathey provided a copy of his military orders to the bank prior to entering active duty.[38] However, the bank continued to charge an interest rate in excess of the 6%.[39] Upon his return from active duty, he demanded a cash refund of the overpaid interest from the bank and alleged that they would only refund the interest with additional concessions on the loans.[40] The bank refused to refund the overpaid interest despite repeated demands by the Catheys, individually and through the armed services, and proceeded to seize and sell both stores.[41]

First Republic Bank argued that the Catheys were not entitled to the interest rate reduction because the loans were signed by each of the Catheys, as well as their corporation, and as such are not covered by the SCRA.[42] The court dismissed this argument and stated: "while it is the serviceman who is provided interest rate protection under the [SCRA] and not his co-makers, the result is the same. Interest on that obligation may not be charged in an amount in excess of the statutory rate of 6% per annum."[43] The defendants also claimed that a private cause of action did not exist and that, in effect, the SCRA is a right without a remedy.[44] The court disagreed with this claim and instead agreed with and adopted the reasoning of *Moll*.[45] The court, quoting the plaintiff, stated: "[It] would lead to an absurd conclusion to say that Congress enacted a fairly elaborate legislative scheme to protect service members in a variety of ways and then throw their claims out of federal court when they sued to enforce their rights and collect damages when violation of their rights cause them damages."[46] The court declined to determine the proper remedy for the plaintiffs, as the issue was not before the court, and limited its finding to the existence of a private cause of action under the SCRA.[47]

---

[35] *Id.* at 13 (finding a private cause of action under § 518 of the SSCRA).

[36] *Cathey v. First Republic Bank*, 2001 U.S. Dist. LEXIS 13195 (W.D. La. August 13, 2001).

[37] *Id.* at 3.

[38] *Id.*

[39] *Id.* at 4.

[40] *Id.*

[41] *Id.* at 5.

[42] *Id.* at 11.

[43] *Id.* at 14.

[44] *Id.* at 17.

[45] *Id.*

[46] *Id.*

[47] *Id.* at 19.

In *Linscott v. Vector Aerospace*,[48] the United States District Court for the District of Oregon found an implied private cause of action for a violation of the prohibition against foreclosure or enforcement of liens during any period of military service.[49] Linscott, a major in the Air Force Reserve, alleged that Vector Aerospace, a Canadian company doing business in the United States, violated the SCRA by wrongfully asserting a lien on his property while he was on active duty.[50] Linscott alleged that a helicopter engine overhaul preformed by Vector was defective and refused to pay for the work until it was completed correctly.[51] Vector retook possession of the engine and promised a quick turnaround so that a temporary engine would not be needed.[52] However, once Vector had possession of the engine, it claimed that the work was completed satisfactorily and refused to return the property until the outstanding bills were paid.[53] Linscott provided a copy of his orders to Vector and notified the company that they were in violation of the act by asserting a lien on his property, but Vector stated that it was entitled to a lien under Canada's Repairers Lien Act and that the SCRA did not apply in Canada.[54] The court disagreed and found the act applicable to Vector based on its assertion of a lien on the helicopter engine while doing business in the United States.[55]

The court then turned its focus to the question of whether a private cause of action existed under the section prohibiting foreclosure or enforcement of a lien while the servicemember is on active duty. The defendant argued that the section did not provide a private cause of action. Linscott argued that in other cases, courts had found an inferred private cause of action in other sections of the act, and that the court should find a private cause of action in the section in question.[56] The court cited the reasoning under *Moll*, *Marin*, and *Cathey* as being applicable to the current dispute.[57] The court reasoned that under the *Cort* analysis, "the most important inquiry ... is whether Congress intended to create the private remedy sought by the plaintiffs,"[58] and that the "legislative intent factor clearly favors plaintiffs. There is no indication that in enacting and renewing the Act, Congress intended to create rights without remedies."[59] The court concluded, after completing the *Cort* four-part analysis, that a private cause of action existed for a violation of the prohibition against foreclosure or enforcement of a lien.

In *Batie v. Subway Real Estate Corp.*,[60] a servicemember alleged that Subway Corporation violated the SCRA by evicting him from two commercial spaces while he was deployed to Afghanistan.[61] After obtaining declaratory judgments in the state of Texas courts, Subway evicted

---

[48] *Linscott v. Vector Aero.*, 2006 U.S. Dist. LEXIS 6287 (D. Or. January 31, 2006).

[49] *Id.* at 21.

[50] *Id.* at 6.

[51] *Id.* at 4.

[52] *Id.* at 5.

[53] *Id.*

[54] *Id.*

[55] *Id.* at 13.

[56] *Id.* at 14.

[57] *Id.* at 19.

[58] *Id.* (quoting *Suter v. Artist M.*, 503 U.S. 347, 364 (1992)).

[59] *Id.*

[60] *Batie v. Subway Real Estate Corp.*, 2008 U.S. Dist. LEXIS 11458 (N.D. Tex. February 15, 2008).

[61] The servicemember claimed Subway violated the SCRA procedures, in two different proceedings before state courts, by failing to: (1) properly serve plaintiff; (2) appoint an attorney for plaintiff; (3) notify the court of plaintiff's status as a U.S. serviceman or his deployment abroad; (4) apprise plaintiff of the eviction notice; and (5) stay proceedings (continued...)

*The Servicemembers Civil Relief Act (SCRA): A Private Cause of Action*

the servicemember from the spaces under lease. Batie filed suit in the federal district court seeking relief from the declaratory judgments and for compensatory and punitive damages for the alleged violations of the SCRA. The U.S. district court declined to overturn the state declaratory judgments, stating "Congress envisioned that state courts—not federal district courts—would decide claims involving SCRA's tenant protections during eviction proceedings."[62] The court interpreted the act to mean that jurisdiction is not exclusive in federal court and that the act does not compel federal adjudication of all cases implicating the statute's provisions. Denying the claim for compensatory and punitive damages, the court referred to the failure of the servicemember to cite any provisions in the SCRA authorizing damages.[63] Further, the court found that, even if the servicemember maintains the SCRA as a basis for damages, "there is no provision in SCRA that authorizes a private cause of action to remedy violations of the statute."[64] The servicemember's claims were dismissed by the court. However, Batie filed a Motion for Reconsideration citing cases in which courts have interpreted certain sections of the SCRA to create a private cause of action.[65] In light of the precedent cited by Batie's motion, the court vacated its earlier decision and reinstated the complaint for further adjudication.[66]

In contrast, the United States District Court for the Western District of Michigan, in *Hurley v. Deutsche Bank Trust Company*,[67] stated that "the SCRA affords certain rights to servicemembers, but a private cause of action is not among them."[68] Hurley asserted multiple violations of the SCRA and a separate claim of conversion under state law against Deutsche Bank related to the foreclosure, eviction, and subsequent sale of his primary residence while he was deployed to Iraq.[69] The defendants asserted that the SCRA sections cited by Hurley did not expressly create a private cause of action, nor could one be inferred because the penalty provisions provide an adequate means of enforcement.[70] Additionally, the defendant argued that the SCRA merely preserves private causes of action that exist independent of the act.[71] The court found that none of the sections cited by Hurley expressly provided for a private cause of action,[72] and turned to the question whether the SCRA created an implied private cause of action. Relying on *Cort,* the court utilized the four-part test for determining whether the statute created an implied private cause of action. The court held that the "plain language of the SCRA, coupled with instructive case law,

---

(...continued)

pending plaintiff's return from deployment.

[62] *Batie* at 17.

[63] Sections addressing rent, installment contracts, mortgages, liens, assignments, and leases under Title III do contain language discussing consequential and punitive damages as an appropriate form of a remedy, though none of these sections would apply to a commercial lease or eviction from commercial space.

[64] *Batie* at 22.

[65] *See* Batie Motion for Reconsideration of Order Dismissing Claims Against Subway Real Estate Corporation with Prejudice, Civil Action No. 3-07CV-1415M, citing *Marin v. Anderson*, 1998 WL 1765716 (N.D. Tex. September 21, 1998).

[66] *Batie v. Subway Real Estate Corp.*, 2008 U.S. Dist. LEXIS 102539 (N.D. Tex. March 12, 2008).

[67] *Hurley v. Deutsche Bank Trust Company*, 2008 U.S. Dist. LEXIS 80526 (W.D. Mich. September 30, 2008).

[68] *Id.* at 19.

[69] The servicemember claimed violations of the SCRA by (1) conducting a foreclosure by advertisement (50 U.S.C. app. §§ 516(a) and 533(c)), (2) allowing the redemption period to run (U.S.C. app. § 526(b)), (3) evicting the plaintiff's family from the property (50 U.S.C. app. § 531)), and (4) selling the property to a bona fide purchaser (50 U.S.C. app. § 521(h)).

[70] *Hurley* at 15.

[71] *Id.*

[72] *Id.* at 16.

persuades the Court that the SCRA does not imply a private cause of action for damages for foreclosure, redemption, eviction, or sale to a [bona fide purchaser]."[73] The court dismissed Hurley's claim under the SCRA, but allowed the claim of conversion under Michigan state law to proceed.

Shortly after the decision dismissing his claim under the SCRA, Hurley filed a Motion for Reconsideration, citing the decision by the U.S. District Court for the Northern District of Texas to vacate its decision in *Batie*, thereby allowing a private cause of action under the SCRA to proceed. In denying the motion, the court stated that *Batie*, as an out-of-circuit case, was only instructive and that it was not required to adhere to it.[74] In order to appeal the decision of the district court, Hurley filed a Motion for Certification of Order and Memorandum Opinion and Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b).[75] In considering the motion, the court reexamined its prior ruling "in light of several cases holding that a private cause of action exists under various sections of the SCRA" and concluded that it had been wrong.[76] Discussing the decisions in *Batie, Moll, Marin, and Linscott*, the court subsequently held that a private cause of action existed under various sections of the SCRA,[77] and proceeded to vacate its earlier opinion concluding that a private cause of action did not exist, as well as an earlier opinion and order denying reconsideration of that decision.[78] The court granted summary judgment on some of the plaintiff's claims, but left the determination of punitive damages for future litigation in the case.

While the majority of U.S. district courts ruled on the question found an implicit private cause of action under the SCRA, the protracted litigation in *Hurley* illustrates the challenges some servicemembers endured to establish a right to sue under the act. The issue has not yet been considered by a U.S. court of appeals and therefore judicial precedent has not been established for the lower courts to follow.[79] However, in light of the legislation discussed below, it appears unlikely that a court will find it necessary to establish such a precedent.

---

[73] *Id.* at 17.

[74] *Hurley v. Deutsche Bank Trust Company*, 2008 U.S. Dist. LEXIS 92872 (W.D. Mich. November 14, 2008).

[75] 28 U.S.C. § 1292(b) addressing Interlocutory Appeals states that

> [w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

[76] *Hurley v. Deutsche Bank Trust Company*, 2009 U.S. Dist. LEXIS 20261 (W.D. Mich. March 13, 2009) at 3.

[77] *Id* at 12-13. (a private cause of action was found to exist under 50 U.S.C. §§ 526, 531, 533(c)).

[78] *Id.* at 32.

[79] A decision of a U.S. court of appeals is binding on the U.S. district courts within that circuit and must be followed by those courts. Other federal circuits may view the decision as persuasive precedent, but are not bound to follow the decision.

# Congressional Action

In the 111th Congress, H.R. 2696, the Servicemembers' Rights Protection Act, was introduced containing language addressing enforcement of provisions of the SCRA.[80] During a hearing before the House Committee on Veterans' Affairs, Subcommittee on Economic Opportunities, Representative Brad Miller testified, citing *Batie* as an example of confusion in the courts, in favor of explicitly establishing a private cause of action in the SCRA.[81] Although H.R. 2696 was not enacted, the provisions of the bill were incorporated into H.R. 3949, the Veterans' Small Business Assistance and Servicemembers Protection Act of 2009.[82] The report accompanying H.R. 3949 included the rationale of the House Committee on Veterans' Affairs for including language creating a private cause of action for servicemembers and their dependents aggrieved by violations of the act. Citing the split among U.S. district courts with respect to whether a private cause of action exists under the SCRA (discussed above) and the likelihood of continued ambiguity without further guidance, the committee stated, "Congress seeks to provide guidance to the courts by clarifying the purpose and intent of the Act, and unambiguously state that a private cause of action does exist."[83] Ultimately, the provisions from H.R. 3949 were incorporated into H.R. 3219, the Veterans' Benefits Act of 2010.[84]

On October 13, 2010, P.L. 111-275, the Veterans' Benefits Act of 2010, was enacted. In addition to clarifying protections under the SCRA, including those related to residential and motor vehicle leases, the act explicitly creates a Title VIII addressing civil liability.[85] Under Title VIII of the SCRA, the U.S. Attorney General is authorized to commence a civil action to enforce provisions of the act. Servicemembers and their dependents have the right to join an action commenced by the U.S. Attorney General, but they may also commence their own civil action (i.e., a private cause of action) to enforce protections afforded them under the SCRA. Finally, Title VIII provides that neither the U.S. Attorney General's authority or the servicemember's right of a private cause of action preclude or limit any other remedies available under the law, including consequential or punitive damages for violations of the SCRA.

The U.S. Attorney General is authorized to commence a civil action in U.S. district court for violations of the SCRA by a person who (1) engages in a pattern or practice of violating the act, or (2) engages in a violation that raises an issue of significant public importance. The act authorizes courts to grant any appropriate equitable or declaratory relief, including monetary damages to any person aggrieved by the violation of the act. Courts may also, in order to vindicate the public interest, assess a civil penalty up to $55,000 for a first violation and up to $110,000 for any subsequent violations. Finally, individuals alleging violations of the SCRA, for which the Attorney General has commenced an action, are authorized to intervene in the

---

[80] H.R. 2696, 111th Cong., 1st Sess. (2009).

[81] U.S. Congress, House Committee on Veterans' Affairs, *Veterans' Small Business Assistance and Servicemembers Protection Act of 2009*, report to accompany H.R. 3949, 111th Cong., 2nd sess., November 2, 2009, H.Rept. 111-324 (Washington: GPO, 2009), p. 6.

[82] H.R. 3949, 111th Cong., 1st Sess. (2009).

[83] H.Rept. 111-324 (2009), p. 7,

[84] H.R. 3219, 111th Cong., 1st Sess. (2009). *See Joint Exploratory Statement for H.R. 3219, as Amended*, Cong. Rec. S7657 (daily ed. September 28, 2010).

[85] P.L. 111-275, § 301-303 (October 13, 2010).

previously commenced case as a plaintiff. Individuals intervening in a case may obtain the same relief as if they had filed the case on their own, as discussed below.

In addition to the right to join a previously commenced case, covered individuals are now permitted to commence a civil action for an alleged violation of the SCRA in their own right. The court is authorized to grant appropriate equitable or declaratory relief, including monetary damages, as well as award costs and reasonable attorney fees to a prevailing servicemember or dependent. Prior to enactment of P.L. 111-275, individuals and/or entities that violated specified sections of the SCRA may have been subject to penalties. With the exception of the provision related to interest rate limitation in Title II,[86] only the provisions in Title III (addressing rent, installment contracts, mortgages, liens, assignments, and leases) included a penalty provision.[87] However, with enactment of Title VIII, it is explicitly clear that any violation of the SCRA could result in a civil penalty, including, but not limited to, consequential and punitive damages. Additionally, provisions found in Title III include language classifying a violation as a misdemeanor. For example, provisions applicable to evictions state that a "person who knowingly takes part in an eviction or distress ... or attempts to do so, shall be fined as provided in title 18, United States Code, or imprisoned for not more than one year, or both."[88]

## Author Contact Information

(name redacted)
Legislative Attorney
[redacted]@crs.loc.gov, 7-....

---

[86] *See* Section 207 (Maximum rate of interest on debts incurred before military service) (10 US.C. 50 app. § 527).

[87] *See* Sections 301 (Evictions and distress), 302 (Protection under installment contracts for purchase or lease), 303 (Mortgages and trust deeds), 305 (Termination of residential or motor vehicle leases), 305a (Termination or suspension of contracts for cellular telephone service), 306 (Protection of life insurance policy), and 307 (Enforcement of storage liens) (10 U.S.C. 50 app. §§ 531, 532, 533, 535, 535a, 536, and 537).

[88] 50 U.S.S. app. § 531(c).

# EveryCRSReport.com

The Congressional Research Service (CRS) is a federal legislative branch agency, housed inside the Library of Congress, charged with providing the United States Congress non-partisan advice on issues that may come before Congress.

EveryCRSReport.com republishes CRS reports that are available to all Congressional staff. The reports are not classified, and Members of Congress routinely make individual reports available to the public.

Prior to our republication, we redacted names, phone numbers and email addresses of analysts who produced the reports. We also added this page to the report. We have not intentionally made any other changes to any report published on EveryCRSReport.com.

CRS reports, as a work of the United States government, are not subject to copyright protection in the United States. Any CRS report may be reproduced and distributed in its entirety without permission from CRS. However, as a CRS report may include copyrighted images or material from a third party, you may need to obtain permission of the copyright holder if you wish to copy or otherwise use copyrighted material.

Information in a CRS report should not be relied upon for purposes other than public understanding of information that has been provided by CRS to members of Congress in connection with CRS' institutional role.

EveryCRSReport.com is not a government website and is not affiliated with CRS. We do not claim copyright on any CRS report we have republished.